The second matter is Lawless & Lawless v. Chevron. May it please the Court, Andrea Asaro for Lawless & Lawless. Barbara Lawless and her firm represented Anthony Cash in this race harassment case under California's Fair Employment and Housing Act and obtained a verdict in his favor. As such, under California law, they are presumptively entitled to a reasonable attorney's fee, a fully compensatory attorney's fee. Yet the district court on its own motion... That's under fee, huh? Yes, under the Fair Employment and Housing Act. That's right, Your Honor. The district court on its own motion struck the lawless firm's timely fee application on the theory that the firm no longer represented Mr. Cash, that he had not authorized the fee application, and that his, quote, current objections precluded a finding of consent. The Court's decision is, in fact, legally flawed and factually simply wrong in many respects. First, the fee application was filed when the lawless firm still represented Mr. Cash's counsel of record. Second, the retainer agreement between the lawless firm and Mr. Cash provided that the lawless firm prosecute, quote, all claims on Mr. Cash's behalf, which in a FIHA case would include a claim for statutory attorney's fees, and provided for an allocation of the, quote, gross amount as between the lawless firm and Mr. Cash.  So you're saying the gross amount, is that the attorney's fees plus the damages? Correct. So you lump them all together. That's right. And then the attorneys would take a contingent share of the so-called gross amount or total recovery. That's 40 percent. That's right. Is that amount to fee splitting with a non-attorney? I don't think so, Your Honor. It's a very standard contingency fee arrangement. And it certainly wasn't an issue that troubled the district court. That was not the basis for its decision to strike the attorney's fees application. In fact, this arrangement serves the interest of the client as well as the attorney. It makes their interest compatible. It prevents there being an adverse interest by the attorney, which, of course, would be prohibited. But I think equally important in this case is that even though Mr. Cash complained I'm sorry. How is there an adverse interest by the attorney? What I'm saying is that by virtue of the arrangement that the lawless firm had with Mr. Cash, there is no adverse interest precisely because of the contingent share being allocated based on the gross recovery. So in other words, the attorney's interests are compatible with the client's. Well, what does that mean? That otherwise the attorney would keep the full amount of the attorney fee award and I'd get 40 percent of the damage award? Is that what you're saying? Well, an alternative arrangement. Some do that. Some do that. Some provide an either-or arrangement where the attorney gets either the statutory fees or a contingent share. In this case, it was lumped together as a percentage of the gross recovery. But I think what's really important in this case is that even though Mr. Cash initially complained that he didn't get to see the fee application when it was filed, it's undisputed that once he learned that it had been filed, he never sought to have it vacated. He never sought to have it stricken. To the contrary, he repeatedly stated in his filings with the district court, which were numerous, that he supported the award of attorney's fees to his counsel. In his, what he called his opposition to the court. Do you think the lawyer had an obligation to tell Mr. Cash what they were seeking in fees? Well, I guess it's a matter of practice. Certainly, Ms. Lawless's practice was not to rush. She told him that she, Ms. Lawless told Mr. It seems fairly clear from the papers that they were going to file a motion for attorney's fees. Correct. And he needed to be available to sign declarations. That's right. But she never, I looked at the papers to see if she ever represented him what she was going to be seeking in fees.  Well, I think. And he wanted to know what was going on. Right. He clearly wanted to know exactly how much she was going to be seeking in fees. And what she told him was she didn't know yet because they were. Well, she knew what she was going to be seeking in fees. I'm sorry. She knew what she was going to be seeking in fees. Well, she gave him, I believe she stated. He had a few records, right? I believe she stated in her declaration that she gave him estimates when he called. And, of course, when she actually filed the motion, and when you're doing one of these fee applications, you're calculating the numbers right up until pretty much the date you're filing the application itself. And she gave him estimates. And then once the motion was filed, of course, obviously, he then saw it. And the numbers are there. And he made no effort to have the motion stricken or withdrawn. In fact. Did she send him a copy of the motion? I couldn't tell from the paperwork whether she sent him a copy of the motion. I believe. At the time she filed it. I believe he got a copy from, I guess I don't actually know the answer to that, but I do know that he got a copy from Chevron when they filed. He learned about the filing of the motion when Chevron filed its opposition. And in what he called his opposition to Chevron's opposition. Right. He stated at, this is at excerpts of Record 325. He said, As a matter of law, plaintiff's counsel should be awarded attorney's fees as part of the cost to litigate the claim. So having at that point seen the application and the opposition, he made it very, very clear that he supported the application for attorney's fees. He also said to this Court in a submission in October of 2002, I believe, he said, I do not waive my right to any attorneys to any fee owed or my share of those fees. So I think he's on record very clearly saying, I don't waive the right to fees. I support the award of attorney's fees to counsel. Was there ever a motion filed in the district court asking the district court to strike the fee application? No. Where did that come from? The district court just sort of, well, it doesn't look like he gave his permission to file this, and so, therefore, it's not properly filed? I must say, when I read this file, I wondered that, too. Where did this come from? And the best I can tell, it didn't come from Chevron, it didn't come from the initial fee briefing. It seems to have come from, possibly, from Mr. Cash's filings concerning access to his file. He was fairly unhappy after the verdict. I think he had hoped to do better. There was a falling out with counsel, no question about it. There was some discussion about the file, about substitution of counsel, and there were motions to compel and to disclose the file. And there was sort of a skirmish going on there. And the best I can tell, that is what prompted the district court to request additional briefing. And that's pretty much the genesis of it. But it does arise on a very unusual procedural – in a very unusual procedural posture. It is – there's no evidentiary hearing or equivalent, really. It isn't even as fulsome as a summary judgment motion, which is really part of the problem here, I think, is that this decision was made without a full record and based on, I think, clearly, clearly, factually erroneous conclusions. For example, I don't know what the, quote, current objections by Mr. Cash could have been that the district court had in mind, given that he's on record in March – on March 27th of 2002 saying that he supports the award of attorney's fees to his counsel. And, of course, he has said the same thing to this Court. Could Mr. Cash have discharged counsel, dealt directly with Chevron, negotiated a higher recovery, paid the 40 percent, and come out much better in the process? Could that have happened under California? I'll make sure I understand the full hypothetical. Could he have separately terminated his relationship with counsel? You said that they'd had a falling out. He was dissatisfied with the 150,000 that he recovered. And if he fired the lawless firm and negotiated pro se directly with Chevron and settled for 400,000, I don't know if these figures add up, and then paid the 40 percent and come out better than the contract he had, and could he have done that? So is there part of that mixed up in what? The retainer agreement – well, first of all, the lawless firm would have a lien. But beyond that, the contract – A lien to the amount of the 40 percent under the contract, right? That's right. But the retainer agreement has a clause that prohibits settlement without mutual consent, which is designed to prevent the plaintiff from settling around counsel's back, so to speak. But if Mr. Cash had come to Ms. Lawless and said, I really want to settle on these terms, she would have consented. She would have had to consent ethically and legally. But it's really quite – it's really speculative, with all due respect, because, in fact, the district court speculates in a footnote that Mr. Cash might have thought he could do better by settling. But the record, once again, is very clear. Following the verdict, there are three offers of settlement conveyed by the lawless firm to Chevron on Mr. Cash's behalf. One of them is at page 577 of the excerpts of record, and it is – it's in Mr. Cash's own writing. It has a cover letter from the lawless firm. Mr. Cash says he wants a monetary sum, quote, in my pocket, plus attorney's  fees. So – and this is in September of 2001. And then again in November, there are two further settlement offers conveyed on Mr. Cash's behalf by the lawless firm, both of which provide – one of which is similar in that it's a damages amount plus fees. The other one is a lump sum including fees. So clearly, he never intended to waive these. Kennedy. Let me ask you a question. Now, this retainer agreement, I don't seem to have a copy of it, but does that provide that Mr. Cash gets 60 percent of any attorney fee award? The retainer agreement provides that he gets 60 percent of the gross amount recovered. So once again – No, no, no. You have to answer my question. Sorry. Does it say he gets 60 percent of the – or put it the other way, does it say if there's an attorney fee award, the attorney, you know, gets to keep 40 percent and Mr. Cash gets 60 percent? The attorney's – the retainer agreement, I'm sorry, doesn't use the term attorney's fees in connection with the percentage. It provides – it says that the above percentages, which is 40 for counsel, shall apply to the gross amount of money which you recover for me or on my behalf. So – and again, the other reference is – Well, how does he recover – how would attorney's fees be recovery on behalf of the client? Well, if Ms. Lawless filed the fee application on behalf of Mr. Cash, he's the prevailing party. She files it as his counsel of record. And whatever fees would then be awarded by the court would be added to the damages and the percentage would be applied. I always thought in these cases – and I know I'm wrong now – that, you know, the attorney fee award went to the attorney. The amount of the – of the damage award went to the client. Well, in this case, the arrangement is slightly different. It doesn't really say that. I mean, it just says the gross recovery or whatever that means. The percentage of the – How much – what was the demand here? For attorney's fees? No, no. For damages. The jury awarded $150,000 in damages. Yeah, but what were they – what was the demand of the insurance company for Chevron? The demand initially? Yeah. What do they want? What was he asking for? I mean, you got $150,000. I think Ms. Cash said she spent 2,200 hours on this? The attorney's – the attorney's fees application sets out in great detail all the hours and the rates and so on and applies a discount. But how much – how much did she want in attorney's fees? I believe the unenhanced Lowe's Star was approximately $666,000, a plus cost. Unenhanced Lowe's Star. I'm sorry? Unenhanced Lowe's Star. Correct. She calculated the Lowe's Star, reduced it to account for some areas where they didn't succeed. Yeah. And that's where that number comes from. And then I believe she sought a 1.2 multiplier. And the costs were over $200,000. The costs were over $200,000. That's right. So there was really a big defeat here on a $150,000 damage award. Well, it's not a defeat for Mr. Cash, who was vindicated in his race harassment case. Right now it's a defeat monetarily in the sense that by doing – Well, I mean, he didn't get the money he thought he was going to get. Well, we don't quite know what he thought he was going to get, but – Did she make a trial? Was there a request for a particular award? I believe a trial she requested $300,000 for economic damages and did not seek a particular number for emotional distress. But it's true that by doing – So $300,000 on economic damages, and how much she spent on costs? She spent approximately $200,000 on costs. $200,000 on costs. Including experts and depositions. $600,000 in returns. That's right. Yeah. Well, you know, that's probably why we have all these big budget deficits. Wasn't there something in the papers that Mr. Cash contended that Ms. Lawless kind of promised him that he'd get a seven-figure recovery, which would be, what, a million plus? You know, I would be surprised if Ms. Lawless promised any client that he would get a seven-figure recovery. Did he contend that? Did he contend that? He may have. I frankly don't quite recall as I stand here. But I would like to save five minutes for rebuttal, if I may.  Thank you very much. Good morning. May it please the Court. Counsel, my name is Clement Glynn. And with Quinn Marshall, it is my privilege to represent Chevron for the Court this morning. I want to perhaps start out a sequence and address a few of the points that the are critical points to understanding this appeal. Clearly, although we have not been allowed to see the fee agreement, the fee agreement does in this gross recovery description provide improperly for sharing fees with the client. And that is seen from the brief of the appellant in which it is argued that there is no conflict between the client and lawyer because they both stand to gain by a fee recovery. We have cited the authority in our brief that that is an improper provision. And so the key point is this is not an appeal on behalf of Mr. Cash. This is an appeal on behalf of the lawyer. Are there any State bar rulings on this? Yes. Yes, Your Honor. And we have cited that in our brief. It's the problem by going out of order. You have to find it. But the key case in this appeal is the Flannery decision by the California Court. And Flannery stands for the proposition, among others, that the right to receive fees is exclusively that of the lawyer. No question. They cannot be shared. They are the lawyer's fees. And this distinguishes a FEHA recovery from certain other attorney's fees cases. Flannery requires, however, that the client maintain control at all times over the decision whether to pursue fees or to compromise them in order to enhance settlement. And one of the justices asked a question regarding settlement. I think it was Your Honor. And the fact is that Mr. Cash did complain vehemently to the district court that because of the conflict with his former lawyers, his efforts to settle the case of the fees were not successful. But after he got the verdict, he wasn't happy. Yes. Yes, Your Honor. Mr. Cash was complaining that he was trying to settle the case and the chokehold, as he called it, of his former lawyers were directly interfering with that. And Flannery says, Flannery in essence says that the client is entitled to maintain that control for the very reason that it might enhance his ability to settle his case. Well, isn't there a contradiction there? I mean, on one hand, you know, it's the fee award belongs to the lawyer. On the other hand, you're saying that the law provides that the client can really control whether the lawyer gets the fee award. It is not a contradiction as much as a conflict, but it is a conflict that public policy has resolved in favor of the client. And what it --. Contradiction, conflict. They're pretty close. Okay. And I don't think I need to figure out which is which. But I do know that the law in California is that the client can disadvantage his lawyer if it creates an advantage for him in settlement. Now, that would subject the client potentially to claims by the lawyer or the former lawyer, but that's not the issue before this Court, nor was it the issue before the district court. The issue is the client must be permitted the latitude to compromise fees if he feels it is in his interest. And that is why there is a conflict created by a provision that allows the lawyer a veto power or that says we will share fees and, therefore, I, the lawyer, have a right to interfere with your efforts to settle fees. Yeah, but, you know, that's kind of against the public policy. It encourages private enforcement of these rights. Well, look, the. You know, you have a client and they're unhappy with the result. And so they think they can get more money by holding on to the attorney's fees request. And that's certainly going to, you know, hamper lawyers that would come forward and take some of these cases. Your Honor, I think. I've had cases where the recovery was $10,000, $15,000, but important civil rights were vindicated. And, you know, I'd give the lawyer a quarter of a million dollars. That's when I was on the district court. Sure. And I was on the district court, I had a lot of money, you know. None of us do now. I didn't hear anybody complain about that. Well, but I, the point is that there are competing social policies here. You are correct. And the resolution of the. Conflicts in everything. Lawyers have conflicts with their client, you know. Exactly. I mean, they get cases. They may spend a lot of time on them. Maybe they don't need to do all that discovery, you know, of warehouses of material. And the client ends up paying for it. And maybe out of, you don't get very much good out of it. So there's always a, you hear people talking about this all the time. Well, the kind of conflict that I. Lawyers don't get ready to settle a case until they've, you know, achieved their billable hours. As a defense lawyer, Your Honor, I am well familiar with those kinds of issues. And I agree that more than ever today there is a sensitivity and legitimately. Conflict between going on in the legal profession. A lot of lawyers in these business cases won't take on a client unless they get a percentage of the client's interest in the business. That's a conflict. I mean, we've got conflicts all over. And this conflict, Your Honor, that is the lawyer, the client's interest in being able to control settlement versus the lawyer's interest in being paid has been resolved in favor of the client. And. Why is that so here? Why was it necessary to strike the fee request in order to accomplish that interest? Not necessary, but procedurally appropriate. Why? Because. Why didn't he just substitute in Mr. Cash as pro per on the motion? Well, Mr. Cash never sought that, number one, Your Honor, but number two. Well, but where did the district court get the idea that it could just strike this motion after Mr. Cash had fired his counsel? That came up. Actually, it was raised by Chevron. And it was raised because the filings with the district court revealed that Mr. Cash was objecting to what his former lawyer had done. And Mr. Cash said in filings with the district court, I did not authorize this. I objected to it. And he went on a great length about it. He also said, though, as counsel just pointed out in her argument, that he supported the request for fees as well. And the critical point here is. My concern is here's what happened. There's this conflict between Mr. Cash and his counsel. And whatever is motivating the district court here, the district court strikes the motion for attorneys' fees. Mr. Cash is then on his own. And when it comes time for Mr. Cash to file his own motion for award of attorneys' fees, which he could do, not for his own time, but for the time that his counsel spent on the case, it's too late. And now Chevron is in the best position ever because it's now no longer, it no longer has to deal with any threat of an attorney's fee award under the statute. And what's the incentive? Where is the Mr. Cash is now suddenly in a very detrimental position. I respectfully disagree. The detrimental position that Mr. Cash was in was that there was a chokehold on what he was trying to do, which was resolve his case. Well, my point, though, is that the district court, by striking that motion, it put Mr. Cash in a worse position. Mr. Cash could have been in that. What could have happened is Mr. Cash could have just been substituted in and given the option. And then at that point by the district court, clearly informing Mr. Cash of the consequences of withdrawing that motion, which would have allowed Mr. Cash to make an informed decision about how to go forward. He was pro per at that time. And suddenly this possible source of payment for attorney's fees is gone. Mr. Cash is not obligated to pay these fees. This is simply an issue as to whether the law firm had authority to file the application that filed when it filed it. The record before the district court. But is he obligated to pay 40 percent of $150,000 to his client? Of the lawyer? Yes, but that's not affected. That's not affected by the recovery of fees under this fee agreement. He has that obligation either way. The gross recovery in which is the 150, and he has to pay 40 percent of that, clearly. But that doesn't change if there's an attorney's fees recovery. That doesn't then relieve him of the obligation to pay 40 percent of the gross recovery, which would include both elements. But my concern, though, is you indicated that there were settlement negotiations or counsel did, that there were settlement negotiations taking place by Mr. Cash. And one of the things that was possible here, as Judge Ferguson pointed out, was that, you know, it's possible he could have enhanced, you know, with the threat of a large attorney's fees award out there of $150,000, facing an appeal, more attorney's fees and costs and whatnot. It's possible he could have, you know, maybe gotten a settlement for $300,000 or $400,000. And now, with that threat of attorney's fees gone, and you guys benefiting very nicely from that, he's stuck. Most he's going to get out of this case is $150,000. I really want to respond to that question. But that might be troubling. Minus 40 percent. The argument, the first issue is not what's fair or unfair or what might have helped or didn't help. It's really what does the law require. And we certainly do. Well, I'd like you to point to me some place that says that the law requires that those, that the district court, when the client has fired his attorney and a motion has been filed, where is the authority that gives the district court, you know, the right to strike that attorney's fees motion? That would be the clear holding of a ruling of Flannery. Where do I get that out of Flannery? Flannery says that. I got Flannery right here. Where's the language? It's at page 586 of the Flannery opinion, Your Honor. And the Flannery says that because the right to determine whether to seek or waive fees or compromise fees rests with the client, that the client must authorize. And so the factual debate, the factual controversy that the district court had to resolve based on the evidence submitted was had Mr. Cash authorized the filing or not. The court, based on the evidence it reviewed, determined that Mr. Cash had not authorized. Now, to Mr. Cash's point. I read here, it says, absent proof on remand of an enforceable agreement to the contrary, the attorney fees awarded in this case belong to the attorneys who labored to earn them. That is 2200 hours. That's a year's work, day and night. Well, maybe it is, maybe it isn't. And, of course, the court has before it the fee application and the opposition, so it would be wrong to assume that even a significant or material part of that application would have been granted had it reached the district court. But if I may, I am trying to answer this question. I know. I'm sorry. But you don't really know what the district court was going to do. I know the merits of the application, and I know what transpired at trial that the district court himself observed. So I think I have an informed speculation, if it pleases the Court. Mr. Cash, to answer your question, Justice Pius, Mr. Cash has not appealed this order. He did appeal from the judgment. He knows how to do that. And the Court's record shows that Mr. Cash is represented and has been represented by new counsel for quite some time. Mr. Pius. The good way to look at this is this was a motion for an award of an attorney's  And by striking the motion, it effectively denied the motion. In our case law, in those circumstances, when there's been a denial of award of an attorney's fees or statutory fees to counsel, the counsel has a right to appeal. Well, there is a standing issue we've raised, and we'll submit it on the briefs because there was no motion to intervene. But in terms of whose ox is gored by the ruling, it is clearly the lawyer, not the client. I agree. And so in that respect, there is an injury to counsel, but there's not an injury to Mr. Cash. There is no reason to speculate, and certainly no reason in the record to speculate that Mr. Cash could not negotiate on the basis of the fact that there was still attorney fee liability, depending on what the circuit might do. The fact is, whether it helped or hurt his settlement position, he is the one who complained, that he was being denied a fair opportunity to try to settle his case by his former lawyer, and that he was the one who ---- I mean, what kind of position do you think he would have been in if the district court had just, you know, relieved counsel and put Mr. Cash in as proper, impropriate persona on the motion for attorney's fees, and the district court said, go see if he can settle this case? What position do I ---- I'm sorry. I think Mr. Cash would have been in a better position with the motion for attorney's fees pending. In terms of leverage? In terms of trying to settle the case. Perhaps. Yeah. Perhaps. Sure he would have. But again, that's a kind of would have, could have rather than what did the law require. Oh, no. But here's the problem, though. Here Mr. Cash is represented by counsel throughout this long, complicated trial. He gets in a fight with his attorney and fires his attorney. The district court allows him to be substituted as counsel of record. And the one pending motion that's unresolved by the district court, the district court, without asking Mr. Cash, I can't see where Mr. Cash authorized or suggested to the district court that the district court strike the motion. The district court on its own strikes this motion and puts Mr. Cash in a detrimental position. When it now comes time for Mr. Cash to file his own motion for award of attorney's fees, it's too late. Well, there's a question as to whether Mr. Cash himself would have standing since he cannot share in the attorney fee recovery. There is an issue as to whether he himself, pro se, could pursue a claim for attorney's fees. And the district court didn't reach that issue. But the fact that the district court, there was a suggestion, I think, and I don't think it was in this case. It may have been in some other case. But there was a suggestion that the fee award be placed in an escrow account while they sort of fight it out through the processes that are available to client and lawyer for resolving attorney fee client disputes. I didn't mean to interrupt. I watch this clock and I get fidgety. I'm sorry. I just found this a little bit surprising. Well, surprising but not unlawful. And surprising only in the sense that it is, admittedly, a somewhat unusual record that confronts the court and that confronted the district court, who made a determination based on conflicting factual submissions. At the time the application was filed, there was a deadline under Rule 54. Suppose a lawyer and a client became – suppose their relationship deteriorated immediately before the statute of limitations might expire on a matter. And because of that deterioration, the lawyer failed to file and the client was in pro se, didn't know what to do, tried to get a lawyer. We could spin the hypothetical out infinite. Is there any question that if the claim in my hypothetical had merit, that the dysfunction that arose prejudiced the client in my hypothetical? Of course not. Would the issue change, however, as to whether he did or did not file within a statutory period? Here, likewise, you have Rule 54 that imposes a deadline for filing. And counsel must, at the time of filing, have authorization from the client to do so. And failing that authorization, which Mr. Cash told the district court he had not given, then the filing is a nullity. The court had the right, and I submit it. Well, you know, if you look at the record here, it's not he knew about the motion. He knew she was going to file it. He didn't tell her not to file it. No. And that was another point I wanted to respond to. Your Honor's suggestion is a little crazy. If the fee award belongs to the lawyer, then why would why is it that the client can block the lawyer from seeking a fee award? Because that's what the court in Flannery said the client could do, indeed, even if it places the lawyer at a disadvantage. But to respond to your question. Isn't that a little crazy? It is a resolution of, it's one of those things that we as lawyers end up sometimes taking the short end of the stick because almost every policy in our profession favors the client over the lawyer. And it is simply another example of one of those where we have to strike a balance between competing interests. We are going, as a profession, for the good of the profession, we are going to favor the client, even in those instances when it places the lawyer at a disadvantage. If I may respond to your question very quickly, because that was one you raised. Absolutely not. There was a conflict. Ms. Lawless-Below told the Court that she had. I'll tell you what I'll do. Suis ponte. I'll give you a little more time. I don't know where he's getting that authority. I thought you were the one complaining about budget deficits. He's our leader. I said I thought you were the one complaining about deficits. You're giving me, we're overspending. No, I appreciate it. No, no, no. I appreciate it. I don't worry about deficits. My grandchildren worry about deficits. And mine as well. They don't worry. And mine as well. But there was, Justice Pius, there was the assertion below that Ms. Lawless had told him in advance she was going to be filing the motion, said he needed to be available by telephone. That was flatly and vociferously, if writing can be vociferous, contested by Mr. Cash, who said absolutely not. Mr. Cash told the Court unequivocally, without any contradiction at any point, after the Rule 54 deadline or before, that the first word he had gotten that there was this fee application was when Chevron served him with its opposition. And then he said, what is this in opposition to what? So that was, again, conflicting evidence confronting the district court, which the district court under Rule 52 had the right to determine, and he did determine. It's not, well, you know, unless Ms. Lawless is lying in her declaration. She says that he, that there was a, she had a conversation with him that he needed to be available because she was preparing the fee application and he needed to be available in order, I guess, to sign a declaration or something. I don't think it needs to be. Before the fee application was filed. And he states in his statements that are not under oath that he had conversations with her and he knew that something was going to be filed on the fee application. The evidence in that, viewing it in the light most favorable to the appellant, was in conflict. And the district court, with the opportunity to fully consider the record, made his determination and resolved that conflict. I don't think it's necessary that he determine that Ms. Lawless was lying. I think he can, however, decide whose position, based on the totality of what was submitted to him, should get the greater weight. And he made that determination sitting as attorney. But the California law seems to recognize an implied authority for the lawyers to go forward and ratification further. No. Pardon me. Under FEHA, it's very clear. FEHA is unique in this respect. It differentiates itself from other attorney's fees provisions. Why can't you have, why do you have to have just explicit authority? Why can't you have implied authority? You could have implied authority, but there is no implied authority on the face of this record. Why not? I probably would turn the question around and say, why is there? Well, how about ratification? You cannot ratify after the statutory deadline, even if you could take and distill and winnow from the voluminous filings of Mr. Cash just the statements favorable to the appellant and ignore all the statements that were unfavorable to the appellant. If you could just put aside the unfavorable, only focus on the favorable, you can't you cannot simply do that and say, okay, well, there was no conflict, no factual conflict for the trial court to determine. There was a factual conflict. He did determine it. So it seems to me that, again, the question, one of the key questions for this Court is the standard of review, and we submit that it is the clearly erroneous standard because the trial judge was, whether there's an oral testimony or not doesn't matter. The rule is clear that the Court's factual determinations are subject to a clearly erroneous standard, not whether it strikes this Court as odd or otherwise. It's just, is it clearly erroneous? Counsel, if I'm understanding what you're saying, is that Mr. Cash has a timely appeal of the $150,000 judgment that's still pending. Yes, Your Honor. Is that right? Yes, Your Honor. And if he refuses to permit this $600,000 fee request, you now benefit from that benefit, and you're not hanging over your head, and he has effectively kept his fee to Ms. Lawless at 40% of the $150,000 because she's out of the picture at that point. So now you're sitting here on appeal, this $150,000 award, and if there's merit in that, you're suggesting that Mr. Cash is benefited by the fact that you don't have to pay the $600,000, so you have more money to up the ante in a settlement of the case that's on appeal and pending? That's certainly one of the outgrowths of this kind of disposition. Absolutely. So that's the basis for his resistance here, or perhaps? I think that, again, I don't want to speculate about what Mr. Cash's motivations were, neither did the district court. The fact is that unencumbered by a fee agreement which apparently vests in the lawyer veto power, which is not permitted under California law, unencumbered by that, Mr. Cash is free to negotiate a settlement of his appeal in which he says, I believe I will win. I believe it will come back to the district court. I believe if it comes back to the district court that you will face much greater exposure because, frankly, I was very dissatisfied with the performance of lawyer number one, and I'll hire good counsel a second time, or whatever else he has said. And therefore, I think I've got some settlement leverage against you. Then the dispute between Mr. Cash and his former counsel over fees is something that is not involving Chevron. That is between Mr. Cash and former counsel. And that is what Flannery recognizes he may do. The odds of that happening are not too good. Of which happening, Your Honor? You know, of him going back and getting, you know, getting reversed on appeal and going back and getting a bigger award and all that. Well, I believe that the odds are, if the appeal on the merits proceeds, that it will be reversed with directions and or judgment for the defendant. That's my view. Mr. Cash and his current highly competent counsel may have a different view. All right. But I'm looking at statistics. And you don't get too many reversals in the court of appeals. Maybe in civil cases, 15 percent. Well, I hope that percentage applies to this disposition as well, Your Honor. Some of those are partial. Well, you're not willing to tell us this morning that you're going to go back and up the ante for the split the difference and give them another $300,000, $400,000 that you're not going to have to pay in part here for the fees. I would be more than happy, but I don't think I can properly discuss with the Court the substance of the settlement discussions that have occurred. Okay. But I all I'm saying is it is not simply a one-way street. You can just tell us in confidence. I'll have to record your answer. I shudder to do that with this many officers of the Court behind me, Your Honor. But seriously, I think it is not appropriate to do that. They're all defendants. I do think it is important to for perspective to understand that it is not simply a disadvantage to Mr. Cash. Mr. Cash is the one who is complaining about the chokehold on his ability to conduct settlement. And that is a crucial the law says that chokehold may not be placed. He has that right. And he was trying to exercise that right. And that's why he wrote what he did to the district court. Is Mr. Cash here today? I did not see him, Your Honor. And he and there's a reason for that. He has not appealed this order. So to the extent that he or his current counsel perceived a disadvantage to him from this circumstance, he had the opportunity to do that. He was able to file the merits appeal. That merits appeal has proceeded. It's a great case, you know, Lawless Cash. The name oddities, Herb Cain is no longer around to capture them for us, but they do occur to each of us. I missed that last. Herb Cain was fond of name freaks. He used to pick up names that, you know, like law firms like Ketchum and Cheatham. Yeah, there's a lot of that around. Yeah, I thought you said Hurricane, but I remember Herb Cain. The Hurricane is what's going on in my mind at the moment, Your Honor. But, you know, we have, you know about our mediation service. Best in the country. We are fully aware of it, and I should not go into further details, but we are fully aware of it. Have you been there? Yes, we have, Your Honor. On this case? Yes, Your Honor. Can I just divert your attention to one? You said that the district court resolved the question that Mr. Cash objected to the filing of the fee in favor of such a finding. But when I look at the district court's order on page 6 of the district court's order, which is from the excerpts of record, page 398, the district court says, in any event, Cash's current objections are sufficient to demonstrate his lack of consent. Now, there also in the record are statements by Mr. Cash that he wanted the fee motion to proceed. So, you know, assuming that the district court was making a finding of fact, why is that statement? What's there to support your statement that the district court made a finding that he never consented to that? If that were the only statement by the district court, and were the record different than it is, then I might have some difficulties. I might join you in that question. But the fact is that there were copious filings by Mr. Cash in which he had expressed strong objection to the fee application being filed, in which he said to the court the crucial point, which is, at the time it was filed, I didn't even know about it, therefore I couldn't imply my consent. I didn't even know about it. I had told my lawyer, do not file anything necessarily to include a fee application unless and until I give you permission, having reviewed it, to do so. And I never did that. Indeed, I never knew it was filed. The fact that after the Rule 54 deadline, Mr. Cash made statements, is not enough to transmute numprotunc, his prior objections at the critical time, to the filing. And you have to look at the statements in their context. Mr. Cash, at the time he was submitting his statements that were more receptive to the ideas of fees, he was presenting the erroneous understanding to the district court that he personally could share in those fees. He cannot, as a matter of law in the state of California, do that. Only the lawyer can receive it. There is, under the state bar rules of professional conduct, you can't split fees with a non-lawyer. And so when he's making statements, well, let's escrow it, let's do these things, that's all in the context of Mr. Cash, perhaps based on the fee agreement, which was misleading in this regard, thought that he might personally put some of the fees in his pocket. Well, I just have one last. I'm concerned about these fees, what the district court did here. And I just want to, the last, my last point and the last thing I have to say about this is, at the last, the ultimate conclusion the district court apparently makes is, although Cash has made some ambiguous statements regarding his intentions with respect to the fees motion, he has not irrevocably exercised his right to demand fees, such that Lawless, Lawless's entitlement to receive them necessarily follows. What does he mean by irrevocably? Well, again, I... Does that mean that he had to give express consent to the filing of the motion? In terms of the argument being addressed by the court, yes. And that's what Flannery says. Flannery says you have... I still don't understand why you can't have implied consent. That's correct. But, again, the court, it's one of those things where you kind of move through the arguments. And in this particular one, I think he's the court, the district court, is dealing with the idea of whether he granted consent or gave permission to the client. And the court, I think, correctly acknowledged that there were statements by Mr. Cash that kind of went both ways. But the first thing out of the box, when Mr. Cash first heard there was a fee motion, after Chevron notified him of that fact by its opposition, Mr. Cash's first and voluminous statement to the court is, no way, I object, I didn't authorize this. That really is the beginning and the end of the inquiry, because the fulcrum point is Rule 54 and its deadline, just like the statute of limitations hypothetical. The fact that Mr. Cash later, based on good advice, bad advice, whatever, thought that maybe he could participate and get the fees himself is not something that can transmute the crucial events that predated the Rule 54 deadline. So, again, Mr. Cash, frankly, in the brief of the appellant, there's these statements that, you know, he just graduated high school, this and this. That's a disservice, and you can see from his filings that that's a disservice. He has the right. And the law doesn't say only people with college educations get to decide whether they're going to compromise fees. And only people with college educations or law school degrees may exercise the right that Flannery recognizes under FEHA. It's all clients, including Mr. Cash, who has displayed in a number of submissions that there was a compromise. Would the bottom line of your argument you're making now be that, you know, if Cash went along with the application for attorney's fees and authorized that application, that the attorneys would get the full amount of the fee award? And would they also be able to get the 40 percent contingent fee they had in their agreement, huh? I believe so. Get it all, huh? I believe so. Now, in terms of what they could ethically do, but the Flannery case also said … You're telling me that's what the law says. Right, because Flannery says that, among other things, that the client cannot share in the fee award. And it says paying the proceeds of such an award to the party … Well, if the client can't share, then why would they say the client's got to give his approval? I mean, that's just … No, it's not. Again, it's because of leverage, Your Honor. It is because the law recognizes that it's a valuable right and a valuable power to be able to compromise attorney's fees. So the law is putting a chokehold on the lawyer. In essence, if you want to use the same term … My ears are going to die. My neck size has kind of gone up during this argument, but it's just the veins. But if you wanted to use the term chokehold and say, yes, it's an equivalent over here, fine and dandy. The law says Mr. Cash wins that jump ball. Mr. Cash can disadvantage the lawyer. The lawyer cannot disadvantage the client. And indeed, this fee agreement has several provisions that are contrary to public policy, including the veto right over settlement, which the district court noted in a footnote. That's not before him, but that would be questionable if were it. But Flannery says that paying attorney's fees at all to the client … Well, maybe sui sponte meant a plague on both your houses, huh? In this case, in so many places in our profession, the law places the greater risk on the lawyer. It gives the greater advantage to the client. And that is because of concerns about how the profession will be perceived. And we're familiar with many different examples of this. And frankly, if I were voting, I'd vote to do it just that way, whichever side of the issue I was on. I think that you've got to do it for the credibility of the client. With all due respect, I failed to see how the district court's order here placed any greater advantage on Mr. Cash. And I don't want to … In fact, I think it placed him at a disadvantage. Given all the – but again, the law doesn't say that he has to make a sound judgment. The law says that Mr. Cash has the power to make a judgment, high school education or not. That's his call. And the district court confronted with this record did not make clear error by ruling that Mr. Cash – that he should accept Mr. Cash's statement that he had told the lawyer not to do what the lawyer later did. And there's no way that you can allow a lawyer, which the argument here is, to file a fee application over the client's objection on the theory that somewhere down the road, the client might change his mind. Because if you think about this concept of retroactive approval, what it would mean is the lawyer could maintain the chokehold and always justify defying the client's wishes by saying, oh, yeah, but I know if I just have some time, I can convince the client to do this. And indeed, for this court, is a submission from Mr. Cash, which is part of the record in which he objected to the fact that he was being asked by his former counsel to execute a declaration falsely stating that, in fact, he had authorized the fee application. And if that prior approval were not so crucial to the disposition of this appeal, why on earth would that request have been made to Mr. Cash, who promptly notified this Court of it and his objection to that conduct? It's a good note to end on. Thank you. Thank you. Thank you very much for the extra time. I've enjoyed it. First of all, I don't think there's anything in Flannery that really addresses the question before this Court on the issue of authorization. Flannery stands for a very simple proposition. In Flannery, the Court said, absent an agreement to the contrary,   authorization wasn't an issue. Apparently, she had authorized the fee application. We don't know. It wasn't an issue in Flannery. Flannery, if anything, stands for the proposition that, as a matter of public policy in California, we encourage attorneys to take cases such as Mr. Cash's case under the Fair Employment and Housing Act by assuring that when they do. Absent proof on remand of an enforceable agreement to the contrary. Right. So I don't know whether that retainer agreement is an enforceable agreement to the contrary. Well, I guess the lawless firm is electing not to take the position that there is no contract, because if they did, then arguably they would be entitled to the entire fees award. They're choosing not to take that position. The point of Flannery is what happens when there's no contract or when there's a contract in dispute. Here we say there is a contract. We say it's enforceable. We say it clearly authorizes the lawless firm to file the fee application, which it did. It's also very important to keep in mind that when that fee application was filed, lawless and lawless was counsel of record for Mr. Cash. It's their obligation to seek attorney's fees on his behalf. In her sworn declaration, Ms. Lawless testified or stated that she contacted Mr. Cash, that he was aware of it, that she asked him to be around. For example, what if she had forgotten when a certain meeting was or something that she needed to put in her application? She wanted him to be around. Also, her time records, which are part of the record in this case, indicate that right around the time of the filing of the fee application, there are multiple conversations, telephone conversations with Mr. Cash. She obviously was talking with him about the fee application. Even if we took Mr. Cash's position that he didn't know it was being filed, when it was filed, after it was filed in March of 2002, before the district court even asked for additional briefing, he's on record saying, as a matter of law, plaintiff's counsel should be awarded attorney's fees as part of the cost to litigate the case. What could be clearer than that in terms of ratifying the fee application once he found out it had been filed? On the issue of settlement, there's absolutely no question. If the district court had asked Mr. Cash if he wanted to withdraw the motion for attorney's fees. If the district court had asked Mr. Cash, would you like a motion to withdraw? Yes. And after advice, you know, after sort of running through the consequences, and Mr. Cash said, I want to withdraw this, I want to withdraw this application for attorney's fees. Well, actually, there is an important point. Would lawless have any position to complain? Well, before I answer that question directly, it's important to note at the hearing, if you look at the transcript of the hearing on the fees motion, one of the first things Mr. Cash says is, I need more time, I need a lawyer. This is over my head, he says. He says that on the record. So clearly, if he had had an attorney, any attorney in her right mind, given this particular fee agreement, would have encouraged. You changed my question. I did. I'm sorry. My question was, what if Mr. Cash had said, I want to withdraw this fee motion, after having been explained by the district court the consequences, and he says, I want to withdraw it. Would lawless firm, would the lawless firm be in any position to complain? Probably not. But that didn't happen. He didn't ask for it to be withdrawn. And I mean, I'm sorry, but that really is important. It's important that he didn't ask for it to be withdrawn. Why do you say probably not? Because I hate to say just no. I mean, I don't know as I stand here. Frankly, I'm not 100 percent sure, so I guess I'm hedging my answer. I know that didn't happen. I'm just saying. Try to think this through. And, you know, I think one of the things that struck me when I was, let's say, opposing counsel was, this is, this result is a lose-lose proposition. It doesn't benefit Mr. Cash. It certainly doesn't benefit counsel and therefore violates or disturbs the public policy underlying the Fair Employment and Housing Act. The only winner in this arrangement is Chevron, whom a Federal jury unanimously found liable for race harassment. There's something, when you step back from this, fundamentally unfair about the result. And particularly given the procedural posture in which this arose, with a sort of sui sponte summary denial or motion to strike on the Court's own motion, the fee application, it just, it's just absolutely contrary to public policy. It undermines the contract that Mr. Cash had with his counsel. It's a, it's a lose-lose situation for plaintiff and counsel. And we would urge that. Do you have any cases that say that, or, or, you know, bar decisions that say that in a case such as this or in a civil rights case, Title VII, that the, that the attorneys receive the award. It's tossed into the same pot with the, with the amount of damages. And then that pot is then just shared, you know, 40-60, the client, the lawyer. I guess I don't have a case in that posture off the top of my head. But I do know that in Venegas, the Court held that there's nothing wrong with the case, and that the client would have a much greater recovery than he would under or she under the contingency fee agreement. But one thing about the State, the State bar opinion that's been referenced in the briefing, it's really important, I think, to remember that, first of all, that's a Section 1988 case, sort of a Jeff D. type of case. And second of all, by its own terms, it says it's advisory only, not binding on any court or on any member of the bar. It's also a case in which the issue was, again, a waiver of fees kind of case, which this is not. Over and over and over, Mr. Cash has made it clear that he does not intend to waive fees. He wants the fees to be awarded. He wants the money to be put in escrow. He understands that he has a dispute with his counsel. He wants the fees put in escrow pending the resolution of that dispute. And that is an eminently sensible arrangement. So we would ask that this Court reverse the district court's order so that the fee application can be adjudicated on the merits. Thank you. Okay. Thanks. All right. We'll submit this matter.
judges: Pregerson, Beam, Paez